**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE**

<u>ROK Builders, LLC</u>

    **v.**                                                 Case No. 12-cv-57-PB
                                          Opinion No. 2012 DNH 148

<u>2010-1 SFG Venture, LLC</u>

<u>**MEMORANDUM AND ORDER**</u>

    This bankruptcy appeal involves the competing claims of two
creditors to the real property of Moultonborough Hotel Group,
LLC ("Debtor").  2010-1 SFG Venture, LLC ("SFG") holds a secured
claim against the Debtor in the amount of $10,622,997 as the
assignee of a construction mortgage on the Debtor's hotel.  ROK
Builders, LLC ("ROK"), the contractor who built the hotel, also
has a claim against the Debtor in the amount of $2,487,412 for
unpaid work that is secured by a mechanic's lien attachment.
After the Debtor filed a petition for reorganization under
chapter 11 of the Bankruptcy Code, SFG commenced this adversary
proceeding against ROK, seeking a declaration that its mortgage
is senior to ROK's mechanic's lien to the extent of
$6,434,074.40, the amount disbursed to ROK for materials and
labor via the mortgage loan.  ROK asserted eleven counterclaims

1

against SFG.  The bankruptcy court dismissed most of ROK's counterclaims for failure to state a claim and subsequently entered summary judgment in SFG's favor on the priority claim. ROK appeals both decisions.  For the reasons provided below, I affirm.

## I.   BACKGROUND

### A.   Factual Background

On September 21, 2007, ROK entered into an agreement with the Debtor for the construction of a Hampton Inn & Suites hotel in Tilton, New Hampshire.  The construction had begun previously but had stalled due to lack of funds.

Three weeks later, the Debtor entered into a loan agreement with Specialty Finance Group ("Specialty"), in which Specialty agreed to lend $8,700,000 to finance construction of the hotel. As security, the Debtor executed and delivered to Specialty a mortgage on the property, which was recorded the next day.

Shortly after the loan closing, ROK resumed construction of the hotel and completed the project in June 2008.  ROK received $6,434,074.40 from loan disbursements as payment for preparing the building site, constructing the hotel, installing permanent fixtures, and providing architectural and engineering services.

Specialty, however, refused to disburse the balance of the loan to pay ROK's invoices for the last two months of construction work.  Specialty made the decision to stop payments because the Debtor had breached the loan agreement by failing to secure additional funding to ensure completion of the project.  Without notifying ROK of its decision to stop payments, Specialty continued to accept ROK's invoices for proposed work during the last two months of construction.  As a result, ROK incurred total unpaid costs in the amount of $2,487,412.

In May 2010, Specialty assigned the mortgage on the Debtor's hotel to the Federal Deposit Insurance Corporation ("FDIC"), as receiver for Silverton Bank, N.A., Specialty's parent company.  The FDIC then assigned the mortgage to SFG. The assignments are identical in form and contain the following clause:

> The mortgage is conveyed 'as is' and 'with all faults,' without any representation or warranty whatsoever, including as to collectability, enforceability, value of collateral, ability of any obligor to repay . . .

Doc. No. 3-6; Doc. No. 3-8.

At some point, the Debtor defaulted on the loan.  In response, SFG scheduled a foreclosure sale of the property to be held on October 1, 2010.

**B.**   **The Debtor's Bankruptcy**

The Debtor filed a voluntary petition for Chapter 11 bankruptcy on September 30, 2010.  As debtor-in-possession, it then began an adversary proceeding against SFG, seeking to avoid SFG's mortgage based on alleged irregularities in the execution of the mortgage deed.  On cross-motions for summary judgment, the bankruptcy court determined that the mortgage is valid and enforceable.

The Debtor and SFG subsequently negotiated a settlement. The settlement is incorporated into the Debtor's proposed Plan of Liquidation.  The Plan provides that "Debtor, on behalf of itself, its estate, its successors and assigns, shall release any and all claims, causes of action, rights and/or remedies asserted in the [Debtor] Adversary Proceeding and/or the [Debtor] Complaint and any other avoidance or other claims [against SFG], including without limitation any claims or causes of action based on theories of equitable subordination."  Doc. No. 16-6.

The bankruptcy court has not yet approved the Plan.  ROK has objected to the Plan on a number of bases, including that it improperly releases ROK's equitable subordination claim against SFG.

4

C.   __Adversary Proceeding between ROK and SFG__

In March 2011, SFG commenced this adversary proceeding against ROK, seeking a declaration that its mortgage is senior to ROK's mechanic's lien to the extent of $6,434,074.40, the amount of the mortgage loan disbursed to ROK for materials and labor.

In response, ROK asserted eleven counterclaims against SFG. Nine counterclaims (labeled Counterclaim I through VIII[1]) involve claims that Specialty breached contractual duties it owed to ROK and engaged in tortious conduct.  Counterclaim IX seeks to equitably subordinate SFG's claim to ROK's claim, and Counterclaim X seeks to avoid the mortgage on the basis of the same alleged irregularities raised by the Debtor in its unsuccessful challenge against SFG.  Lastly, in Counterclaim XI, ROK seeks a declaration that its mechanic's lien is senior to SFG's mortgage.

Following a hearing on SFG's motion to dismiss all counterclaims, the bankruptcy court issued an oral ruling dismissing counterclaims I through VIII, including the redundant fifth counterclaim, because ROK failed to allege any basis on

---

[1] ROK erroneously labeled two separate counterclaims as "Fifth Counterclaim."

which SFG, as assignee of the mortgage, could be held liable for the alleged misconduct of Specialty, the assignor.  The court also dismissed the equitable subordination claim, reasoning that the claim belongs to the Debtor.

SFG subsequently filed a motion for summary judgment.  The court issued an oral ruling granting the motion on December 15, 2011.  Applying the rule of priority set out in RSA 447:12-a, the court determined that SFG's mortgage is senior to ROK's mechanic's lien to the extent of $6,434,074, and dismissed the remaining counterclaims.

## II.  <u>STANDARD OF REVIEW</u>

This court has jurisdiction to hear appeals from final judgments, orders, and decrees issued in bankruptcy court pursuant to 28 U.S.C. § 158(a)(1).  All of the challenged rulings in this case involve pure questions of law.  Accordingly, I review the bankruptcy court's rulings de novo.  See Dahar v. Jackson (In re Jackson), 459 F.3d 117, 121 (1st Cir. 2006); Watman v. Grotman (In re Watman), 458 F.3d 26, 31 (1st Cir. 2006).

The bankruptcy court disposed of certain claims on summary judgment and others on a motion to dismiss.  The summary

judgment standard under Federal Rule of Civil Procedure 56 applies to bankruptcy adversary proceedings. Fed. R. Bankr. P. 7056; see Canzano v. Ragosa (In re Colarusso), 382 F.3d 51, 58 (1st Cir. 2004). Accordingly, "a motion for summary judgment should be granted only when there are no genuine issues of material fact and when the moving party is entitled to summary judgment as a matter of law." In re Colarusso, 382 F.3d at 58.

Similarly, "[t]he jurisprudence of Rule 12(b)(6) is applicable to motions to dismiss in bankruptcy cases." Banco Santander de P.R. v. Lopez-Stubbe (In re Colonial Mortgage Bankers Corp.), 324 F.3d 12, 15 (1st Cir. 2003); see Fed. R. Bankr. P. 7012(b). I must "assume the truth of all well-pleaded facts and indulge all reasonable inferences that fit the plaintiff's stated theory of liability." In re Colonial Mortgage Bankers Corp., 324 F.3d at 15. I must then determine whether those allegations and inferences "state a plausible, not a merely conceivable, case for relief." Sepúlveda-Villarini v. Dep't of Educ. of P.R., 628 F.3d 25, 29 (1st Cir. 2010).

### III.  ANALYSIS

ROK appeals the bankruptcy court's determination that SFG's mortgage takes priority over ROK's mechanic's lien, as well as

the court's dismissal of ROK's remaining counterclaims.  I
address each claim in turn.

A.   **Priority**

The bankruptcy court determined on summary judgment that
SFG's construction mortgage is senior to ROK's mechanic's lien
to the extent of $6,434,074, the amount of the mortgage loan
disbursed to ROK for materials and labor.  The court reasoned
that RSA 447:12-a unambiguously resolves the priority dispute in
SFG's favor.  I agree.

The general rule of priority in New Hampshire is "race-
notice," that is, "a purchaser or creditor who records without
notice of a prior unrecorded interest has the senior lien."
Lewis v. Shawmut Bank, N.A., 139 N.H. 50, 51 (1994).  RSA
447:12-a creates an exception to that rule.  It provides that
that a mechanic's lien attachment has priority over any
construction mortgage.  N.H. Rev. Stat. Ann. § 447:12-a.  The
priority, however, is qualified as follows: "[S]uch attachment
shall not be entitled to precedence as provided in this section
to the extent that the mortgagee shows that the proceeds of the
mortgage loan were disbursed either toward payment of invoices
from or claims due subcontractors and suppliers of materials or
labor for the work on the mortgaged premises[.]"  Id.

8

ROK does not dispute that it received the amount at issue as payment for materials and labor from proceeds of the mortgage loan.  Instead, ROK contends that the statute has no effect on its rights.  ROK's convoluted argument boils down to the following two assertions: (1) RSA 447:12-a was enacted against a backdrop of common law that provided unqualified priority to a mechanic's lienholder in ROK's position; and (2) the statute was enacted to expand rather than abrogate mechanic's lienholders' common law rights.  To construe the statute as subordinating its lien to the extent it received payments from loan disbursements, ROK argues, would be an unwarranted derogation of the common law.  ROK's argument is meritless in light of the plain language of the statute.

When the language of a statute is plain and unambiguous, the court must "ascribe the plain and ordinary meaning to the words used," State v. Formella, 158 N.H. 114, 116 (2008), and "need not look beyond the statute for further indications of legislative intent," Hynes v. Hale, 146 N.H. 533, 539 (2001) (internal quotation marks omitted).  Although statutes "should be narrowly construed [when] they are in derogation of the common law," the court cannot "read into these statutes a

limitation that the legislature left out." Collins v. Martella,
17 F.3d 1, 4 (1st Cir. 1994).

Applying these well-established cannons of statutory
interpretation to RSA 447:12-a, I conclude that the statute
unambiguously sets forth the exact terms of priority between a
mechanic's lien attachment and a construction mortgage,
notwithstanding any prior inconsistent common law.  The statute
plainly provides that the attachment is not entitled to priority
to the extent that mortgage loan proceeds have been disbursed to
suppliers of materials or labor.  N.H. Rev. Stat. Ann. § 447:12-
a; see Bascom Const., Inc. v. City Bank & Trust, 137 N.H. 472,
476 (1993) (interpreting RSA 447:12-a as "establish[ing] the
priority of mechanic's liens over construction mortgages, to the
extent that mortgage loan proceeds have not been disbursed to
suppliers of materials or labor").  Accordingly, I need not
consider whether the legislative history is indicative of a
narrower scope of applicability.  See Hynes, 146 N.H. at 539.

More importantly, I cannot read into the statute a
limitation that conflicts with the plain language the
legislature chose to use.  Nothing in the language of the
statute suggests that when the application of the statute is
unfavorable to a mechanic's lienholder, the court must instead

apply preexisting common law rules.  The statute clearly delineates terms of priority between a secured mechanic's lien and a construction mortgage and leaves no room for inconsistent common law.[2]

Applying the statutory priority rules in this instance, moreover, is consistent with the overall statutory scheme.  See Hammell v. Warden, 146 N.H. 557, 558 (2001) ("[The courts] interpret statutes in the context of the overall statutory scheme and not in isolation." (quoting Rye Beach Country Club v. Town of Rye, 143 N.H. 122, 125 (1998))).  A mechanic's lien is a creation of statute.  See N.H. Rev. Stat. Ann. § 447:2.  To perfect a mechanic's lien, a party must acquire an attachment on the specific property to which it supplied labor or materials. Id. § 447:10.  It is the attachment, rather than the lien itself, that has a qualified priority over a construction mortgage.  Id. § 447:12-a.  ROK obtained an attachment to

---

[2] The plain-meaning interpretation of the statute is not inconsistent with the idea that RSA 447:12-a is a remedial statute designed to benefit mechanic's lienholders, as ROK suggests.  At common law, mechanic's liens were for the most part subordinate to mortgages, with certain limited exceptions. RSA 447:12-a changed the priority rules to give precedence to mechanic's liens in most circumstances, but carved out an exception for mortgage loan disbursements to suppliers of materials or labor.  That the legislature specifically chose to limit the extent of the remedy it bestowed does not somehow create an internal conflict in the statute.

perfect its lien pursuant to RSA 447.  See Doc. No. 3-16 at 25-
27.  It therefore seeks precedence by virtue of the same
statutory chapter that limits the effect of its attachment as
outlined in RSA 447:12-a.  ROK cannot avail itself of the
statutory benefits of attachment and then seek to avoid the
limitations that the legislature imposed on that statutory right
by reverting back to common law rules.

The priority of ROK's attachment is plainly subject to the
qualification in RSA 447:12-a.  Accordingly, the bankruptcy
court correctly determined that SFG's construction mortgage is
superior to ROK's mechanic's lien to the extent of the loan
disbursements ROK received as payment for materials and labor on
the hotel.[3]

## B.  <u>Equitable Subordination</u>

As an alternative means of gaining priority over SFG's
mortgage, ROK asserts an equitable subordination claim.  The
bankruptcy court dismissed the claim, reasoning that ROK is not

---

[3] In its appeal brief, ROK also appears to argue that the
priority rule set out in RSA 447:12-a only comes into effect
after the mechanic's lien attachment is given priority over the
construction mortgage to the extent of all loan disbursements
made to pay for non-construction expenses, here totaling
approximately $ 1.9 million.  This argument is founded in basic
misreading of the case law, and is wholly without merit.  See
Lewis v. Shawmut Bank, N.A., 139 N.H. 50, 54 (1994); Gerrity Co.
v. Laconia Sav. Bank, 120 N.H. 304, 307-08 (1980).

the appropriate party to seek equitable subordination.  I need
not go as far to affirm dismissal of the claim.

Section 510(c) of the Bankruptcy Code permits the
bankruptcy court to subordinate claims otherwise entitled to
priority based on principles of equitable subordination.  11
U.S.C. § 510(c).  The bankruptcy court apparently agreed with
SFG that a creditor may not assert an equitable subordination
claim without leave of the court because the claim belongs to
the trustee.  The theory finds support in several First Circuit
cases.  See Bezanson v. Bayside Enters., Inc. (In re Medomak
Canning), 922 F.2d 895, 902 (1st Cir. 1990) ("The Trustee is
ordinarily the appropriate party to seek equitable subordination
on behalf of the estate and unsecured creditors."); see also
Petitioning Creditors of Melon Produce, Inc. v. Braunstein, 112
F.3d 1232, 1240 (1st Cir. 1997) (same).

Both Medomak and Braunstein, however, were decided on
narrower grounds not present in the instant case.  Specifically,
the issue in both cases was whether an unsecured creditor's
equitable subordination claim is barred by the res-judicata
effect of a court-approved settlement wherein the trustee either
released all equitable subordination claims on behalf of the
estate or chose not to petition the court for this type of

13

relief.  Here, the bankruptcy court has not yet approved the
settlement between the Debtor and SFG that proposes to release
all claims, including equitable subordination claims, which
might be asserted against SFG.  The First Circuit precedent is
nonetheless relevant because it teaches that when a creditor has
notice of and an opportunity to challenge a trustee's proposed
settlement that purports to surrender all equitable
subordination claims, the creditor must present its equitable
claim in opposition to the settlement, rather than in a separate
adversary proceeding.

As the court explained in Medomak, unsecured creditors have
a duty "to pursue their individual equitable subordination
claims in an orderly fashion within the context of the Trustee's
proposed settlement with the secured creditors."  922 F.2d at
902.  If creditors are allowed to bring equitable subordination
claims in a separate proceeding, "there is no reason for the
settlement, since the settling parties are neither protected
from further unfavorable consequences nor allowed to enjoy the
safe harbor of their settlement arrangement."  Braunstein, 112
F.3d at 1240.  Accordingly, where a trustee – or, as in this

case, the debtor-in-possession[4] – enters into a settlement
agreement that proposes to surrender all equitable subordination
claims against a secured creditor, and unsecured creditors
receive notice of and an opportunity to object to the
settlement, it is incumbent upon them to press their equitable
subordination claims in objecting to the proposed settlement.
See id. at 1239-40; Medomak, 922 F.2d at 902.  If the bankruptcy
court approves the settlement over the creditors' objections,
the creditors may preserve their right to bring the claim only
by directly appealing the court's decision.  Braunstein, 112
F.3d at 1239-40; Medomak, 922 F.2d at 902.

    In the present case, the proposed settlement is pending
before the bankruptcy court.  ROK has objected to it on a number
of bases, including that it improperly releases ROK's equitable
subordination claim against SFG.  ROK must continue to pursue
its equitable subordination claim within the main bankruptcy
case.  Because this adversary proceeding is not the appropriate
forum to bring the claim, I dismiss it without prejudice.

_____

[4] "[I]n a Chapter 11 case, the debtor-in-possession enjoys all
the rights and powers of the trustee."  Eagle Ins. Co. v.
BankVest Capital Corp (In re BankVest Capital Corp.), 360 F.3d
291, 295 n.8 (1st Cir. 2004).

C.   **Avoidance Claim**

ROK also asks the court to declare as void the mortgage that the Debtor executed and delivered to Specialty.  The basis for the challenge is the allegation that the mortgage was not conveyed by a party with authority and was not acknowledged by a notary public.  In the previous adversary proceeding against SFG, the Debtor in fact sought to avoid the mortgage on the exact same grounds.[5]  The bankruptcy court determined that the mortgage is valid and enforceable and dismissed the claim.  See Doc. No. 7.

Section 544(a) of the Bankruptcy Code makes it clear that only the trustee can bring an avoidance claim.  See 11 U.S.C. § 544(a).  That ROK repackages the claim in the dress of a declaratory judgment action to have the mortgage declared void does not change the nature of the claim.  The cause of action belongs to the Debtor and the Debtor litigated it and lost.  For ROK to continue to press the claim in the context of this adversary proceeding without developing an argument or even acknowledging that the same claim was pressed in another adversary proceeding in the same chapter 11 case is indicative

---

[5] Indeed, as SFG points out, ROK's counterclaim is a nearly verbatim reproduction of Count I of the Debtor's complaint.

of a counsel who is less than serious about his obligations to his adversary and to this court.  The claim is dismissed.

**D.  ROK's Remaining Counterclaims**

ROK also challenges the bankruptcy court's dismissal of the nine counterclaims that ROK asserted against SFG based on alleged contractual violations and tortious conduct of Specialty, SFG's predecessor in interest.  The bankruptcy court dismissed the claims on Rule 12(b)(6) grounds, reasoning that ROK has alleged no basis on which SFG could be held liable for the misconduct of its assignor.  I address the claims in turn.

**1.  Breach of the Loan Agreement**

ROK alleges that it was owed contractual duties under the loan agreement between the Debtor and Specialty as a third-party beneficiary and that Specialty breached those duties.  The bankruptcy judge did not address the claim separately, but dismissed it with the rest of ROK's counterclaims on the basis that SFG cannot be held liable for Specialty's alleged misconduct.  Under certain circumstances, however, an assignee of a contract can be liable for the assignor's breach of that contract.  See, e.g., Restatement (Second) of Contracts § 328 (1981) (describing circumstances under which assignee of contract assumes assignor's duties under contract).  Indeed, SFG

17

does not argue that the claim should be dismissed because it
took the assignment free of contractual claims against the
assignor.  Instead, it argues that ROK is not a third-party
beneficiary under the contract.  I agree.

The loan agreement provides that the laws of Georgia govern
the construction of the contract and the parties do not argue
otherwise.  Under Georgia law, "[t]he beneficiary of a contract
made between other parties for his benefit may maintain an
action against the promisor on the contract." Ga. Code Ann. §
9-2-20.  Because third-party beneficiary status constitutes an
exception to the general rule that a contract does not grant
enforceable rights to nonsignatories, "[i]n order for a third
party to have standing to enforce a contract . . . it must
clearly appear from the contract that it was intended for his
benefit." Backus v. Chilivis, 236 Ga. 500, 502 (1976).  "The
mere fact that [a third party] would benefit from performance of
the agreement is not alone sufficient." Id.  The contract in
the instant case fails to meet this standard.

ROK points to a number of provisions in the loan agreement
to demonstrate that it was intended for ROK's benefit.  None of
those provisions, or the contract as a whole, however, evinces
any intent to confer a benefit on ROK.  The provisions either

18

merely mention that ROK is the contractor hired to construct the hotel or they impose obligations on the Debtor vis-à-vis its conduct toward ROK for the benefit of Specialty.  See, e.g., Doc. No. 3-2, § 3.23 ("Borrower will not (i) permit any default under the terms of the Construction Contract, (ii) waive any obligations of Contractor thereunder, [or] (iii) do any act which would relieve Contractor from its obligations . . . .").

More importantly, the loan agreement specifically provides that

> [a]ll conditions of the obligations of [Specialty] hereunder, including the obligation to make advances, are imposed solely and exclusively for the benefit of [Specialty] and its successors and assigns and no other person or entity shall have standing to require satisfaction of such conditions . . . and no other person or entity shall, under any circumstances, be deemed to be a beneficiary of such conditions . . . .

Id. § 8.01.  This provision, in no uncertain terms, precludes third parties from seeking to enforce the contract.  The claim was properly dismissed.[6]

_____

[6] To salvage the claim, ROK argues that its construction agreement with the Debtor, which was assigned to Specialty as additional security for the loan, must be read in conjunction with the loan agreement because the two documents constitute a single, integrated contract.  Although separate agreements may be construed together in certain circumstances, here both the loan agreement and the construction agreement contain integration clauses specifying that each instrument embodies the entire agreement between the contracting parties.  See Doc. No.

## 2.   **Unjust enrichment**

In another counterclaim, ROK asserts that it is entitled to restitution based on the theory of unjust enrichment.  It alleges that SFG's assignor misled ROK into completing the construction of the hotel when it had no intention to pay for the work done, and that as a result, SFG received the benefit of a more valuable collateral.  The bankruptcy judge dismissed the claim on the basis that the alleged misconduct of SFG's assignor is not attributable to SFG.  I dismiss the claim on other grounds.

Under New Hampshire law,[7] "[t]he doctrine of unjust enrichment is that one shall not be allowed to profit or enrich himself at the expense of another contrary to equity." Cohen v. Frank Developers, Inc., 118 N.H. 512, 518 (1978) (internal

---

3-2, § 8.10; Doc. No. 3-12, § 9.2.2.  Accordingly, it would be inconsistent with the parties' intentions, as expressed in the two agreements, to construe them as a single, integrated contract.

[7] The parties cite to both New Hampshire and Georgia cases in addressing quasi-contract and tort claims without conducting a choice-of-law analysis.  I apply New Hampshire law to those claims because neither party argues that the matter would be decided differently under Georgia law.  See Okmyansky v. Herbalife Int'l of Am., Inc., 415 F.3d 154, 158 (1st Cir. 2005) ("[W]hen the resolution of a choice-of-law determination would not alter the disposition of a legal question, a reviewing court need not decide which body of law controls.").

quotation marks omitted).  A plaintiff is entitled to
restitution when the court determines that the defendant has
"received a benefit and it would be unconscionable for [him] to
retain that benefit."  Nat'l Emp't Serv. Corp. v. Olsten
Staffing Serv., Inc., 145 N.H. 158, 163 (2000).  A plaintiff
need not prove that the defendant obtained the benefit through
wrongful acts; passive acceptance of a benefit may also
constitute unjust enrichment.  R. Zoppo Co. v. City of
Manchester, 122 N.H. 1109, 1113 (1982); see also Petrie-Clemons
v. Butterfield, 122 N.H. 120, 127 (1982) ("Unjust enrichment may
exist when an individual receives a benefit as a result of his
wrongful acts, or when he innocently receives a benefit and
passively accepts it.").

       The mere fact, then, that SFG did not engage in any of the
alleged misconduct is not dispositive.  Even so, ROK has failed
to state a claim for unjust enrichment.  It is not enough to
allege that SFG received a benefit from services that ROK
rendered without payment.  See Cohen, 118 N.H. at 518-19
("Merely that [the defendant] might be receiving a benefit from
services furnished by the plaintiff . . . is not sufficient in
itself to impose a duty of restitution on [the defendant].").
To state a claim, ROK must allege facts showing that it would be

unconscionable for SFG to retain the benefit it received.  See
Olsten Staffing, 145 N.H. at 163.  Because ROK has failed to do
so, I dismiss the claim.

### 4.   Other Contractual Claims

ROK asserts three other contractual claims: (1) breach of
contract "implied in fact"; (2) promissory estoppel; and (3)
breach of implied covenants of good faith and fair dealing.  The
bankruptcy court dismissed all three claims because the
allegations relevant to the claims involve the conduct of
Specialty, and ROK alleged no basis for holding SFG liable under
those theories.  I address each in turn.

First, ROK claims that the course of dealings between
itself and Specialty resulted in a separate and distinct
contract "implied in fact" that obligated Specialty to pay for
ROK's services.  Specifically, ROK alleges that even after
Specialty made the decision to stop disbursing loan proceeds to
cover ROK's costs, it continued to accept ROK's invoices for
proposed work, as it had done throughout the project.

"[T]he conduct of the parties, apart from oral and written
words, may establish an enforceable, implied-in-fact
contract[.]"  Durgin v. Pillsbury Lake Water Dist., 153 N.H.
818, 821 (2006); see Morgenroth & Assocs., Inc. v. Town of

22

Tilton, 121 N.H. 511, 514 (1981) ("An implied in fact contract
is a true contract that is not expressed in words; the terms of
the parties' agreement must be inferred from their conduct.").
Assuming that such a contract existed between Specialty and ROK,
nothing suggests that SFG can be liable for Specialty's breach.
SFG is the assignee of Specialty's loan agreement with the
Debtor, a separate contract.  That SFG may stand in the shoes of
Specialty with regard to the loan agreement is by no means
sufficient to hold SFG liable for Specialty's breach of other
contracts.  Accordingly, the bankruptcy court correctly
dismissed the claim.

ROK's promissory estoppel claim must suffer the same fate.
Even if Specialty promised to pay for ROK's services and thereby
induced ROK to complete the construction of the hotel to its
detriment, ROK alleges no factual or legal basis for holding SFG
liable for Specialty's conduct.  In the absence of an allegation
that SFG made promises or representations of any kind to ROK,
the claim must fail.

Lastly, the claim for breach of implied covenants of good
faith and fair dealing hinges on the existence of a contract
that ROK could enforce against SFG.  There is no such contract
and so the claim fails as a matter of law.

5.  __Tort Claims__

ROK asserts a number of counterclaims that sound in tort, including negligent lending, fraud, negligent misrepresentation in business, and violation of the New Hampshire Consumer Protection Act.  All of the claims are based on the alleged tortious conduct of Specialty, however, and not SFG.  ROK has failed to provide any legal or factual basis to hold SFG, as assignee of the mortgage, liable for the torts of the assignor.

The assignee-assignor relationship is clearly not sufficient for tort liability to attach.  See In re Riga, 10-11415-FJB, 2011 WL 1115084, at *1 (Bankr. D. Mass. Mar. 25, 2011) ("The mere fact that Deutsche Bank now holds by assignment the promissory note and mortgage that IndyMac is alleged to have procured by fraud does not render Deutsche Bank liable for the fraud of IndyMac."); Krauss v. Fed. Deposit Ins. Corp., 769 F. Supp. 519, 525 (S.D.N.Y. 1991) ("As FCNB's assignee on the Note, JVAA . . . is not generally liable for all of the bank's past torts.  In order to recover from JVAA for fraud, Krauss must establish that JVAA was itself involved in the alleged misrepresentations.").  ROK's argument that SFG assumed Specialty's tort liability because it accepted the mortgage "as is" and "with all faults" is unavailing.  The language clearly

refers to defects related the mortgage itself, rather than to the previous mortgagee's tortious conduct unrelated to the execution of the mortgage.  The bankruptcy court correctly dismissed the tort counterclaims.

## IV.  <u>CONCLUSION</u>

For the foregoing reasons, I affirm the bankruptcy court's decisions.

SO ORDERED.


<u>/s/Paul Barbadoro</u>
Paul Barbadoro
United States District Judge

August 30, 2012

cc:   Deborah Ann Notinger, Esq.
      Steven M. Notinger, Esq.
      William S. Gannon, Esq.
      Edmond J. Ford, Esq.
      Gary D. Ticoll, Esq.
      John H. Bae, Esq.
      Geraldine L. Karonis, Esq.